UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
FREDERICK BEADLE,

               Plaintiff,

      -against-

 FOREVER JERK LLC and
 ONEIL REID,
            Defendants.
-------------------------------------------------X

**REPORT AND
<u>RECOMMENDATION</u>
23 CV 9166 (NCM)(RML)**

LEVY, United States Magistrate Judge:

      By order dated May 2, 2024, the Honorable Natasha C. Merle, United States

District Judge, referred plaintiff's motion for default judgment to me for report and

recommendation.  For the reasons stated below, I respectfully recommend that the motion be

granted.

## BACKGROUND

      Plaintiff Frederick Beadle ("plaintiff") commenced this wage and hour action on

December 14, 2023, against defendants Forever Jerk LLC ("Forever Jerk" or the "corporate

defendant") and Oneil Reid ("Reid" or together with the corporate defendant, "defendants")

asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the

New York Labor Law ("NYLL"), §§ 190, *et seq.*  (Complaint, filed Dec. 14, 2023 ("Compl."),

Dkt. No. 1.)  Reid is alleged to be the owner of Forever Jerk, a domestic limited liability

company with a principal place of business in Jamaica, New York.  (See <u>id.</u> ¶ 11.)  Defendants

allegedly employed plaintiff as a "chef, server, and cashier" beginning "on or about April 14,

2023."  (<u>Id.</u> ¶¶ 16, 20, 21.)  Plaintiff worked for defendants at three store locations from

approximately April 14, 2023 through November 3, 2023.  (See <u>id.</u> ¶¶ 11-14, 22, 23.)  Plaintiff

alleges that the corporate defendant has an annual gross volume of sales that is greater than

$500,000 and is an "'enterprise engaged in commerce' within the meaning of the FLSA, the NYLL and the regulations thereunder." (Id. ¶¶ 18-19.)  Plaintiff alleges that Reid owns and operates Forever Jerk and has power over personnel and payroll decisions; the authority to hire and fire employees; and the authority to establish and pay employees' wages and set work schedules.  (Id. ¶ 17.)

Both defendants in this case were served properly with the summons and complaint.  (See Affidavit of Service of Holly Atkins, sworn to Dec. 28, 2023, Dkt. No. 5; Affidavit of Service of Calvin Chen, sworn to Jan. 15, 2024, Dkt. No. 6.)  Defendants failed to answer or otherwise move upon receipt of the complaint, and plaintiff moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) as to both defendants on February 29, 2024.  (See Request for Certificate of Default, filed Feb. 29, 2024, Dkt. No. 7.)  The Clerk of the Court noted the defaults of both defendants on March 4, 2024.  (See Certificate of Default, dated Mar. 4, 2024, Dkt. No. 8.)  Plaintiff filed the instant motion for default judgment on May 1, 2024.  (See Notice of Motion for Default Judgment, filed May 1, 2024 ("Mot."), Dkt. No. 9.)  On May 2, 2024, Judge Merle referred plaintiff's motion for default judgment to me for report and recommendation.

Plaintiff seeks a default judgment on claims alleged under the FLSA and NYLL for defendants' failure to (1) pay plaintiff minimum and overtime wages, (2) pay spread-of-hours wages, and (3) supply a wage notice and wage statements.  (See Declaration of Robert D. Salaman, Esq., dated May 1, 2024 ("Salaman Decl."), Dkt. No. 9-2, ¶ 20; see also Compl. ¶¶ 1-4; Plaintiff's Memorandum of Law in Support of Motion for Default Judgment, dated May 1, 2024 ("Pl.'s Mem."), Dkt. No. 9-1, at 3-7.)  Plaintiff also seeks an award of damages in the form of unpaid minimum wages, overtime wages, and spread of hours wages; liquidated damages;

statutory damages; pre-judgment interest; and attorney's fees and costs. (See Salaman Decl. ¶¶ 20-24; see also Pl.'s Mem. at 11.)

## DISCUSSION

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here. FED. R. CIV. P. 55(a). Second, after a default has been entered against the defendants, and the defendants fail to appear or make a motion to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). To grant a default judgment, the court must ensure that plaintiff took all the required steps in moving for default, including providing proper notice to defendants of the lawsuit. Here, as explained above, plaintiff has shown that both defendants were properly served with the summons and complaint. Plaintiff has also demonstrated that he served the motion for default judgment and accompanying submissions on defendants in compliance with Local Rule 55.2(c). (See Affidavit of Service of Tyler Fox, sworn to May 1, 2024, Dkt. No. 9-9.)

### A. Liability

An entry of default alone is insufficient to establish liability, "since a party in default does not admit mere conclusions of law." Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted). A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Where a plaintiff moves for default judgment, the court "is

required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). The court must also "determine whether [plaintiff's] allegations establish [defendants'] liability as a matter of law." Id.

Plaintiff has sufficiently pleaded factual allegations that give rise to liability for unpaid minimum and overtime wages under the FLSA and NYLL (see Compl. ¶¶ 40-41, 43-44, 48-61), unpaid spread of hours wages under the NYLL (see id. ¶¶ 42, 45, 62-64), and wage statement and notice violations under the NYLL. (See id. ¶¶ 24-25, 46-47, 65-70.) The extent to which plaintiff can recover damages for these violations initially depends on whether: (1) his claims were timely; (2) he was a covered employee under the FLSA and NYLL; and (3) defendants were his employers under the FLSA and NYLL.

1. Timeliness

For claims to be timely under the FLSA, they must have arisen within the two years prior to filing of the complaint, or—for willful violations—within the three years prior. 29 U.S.C. § 255(a). Here, the complaint, which was filed on December 14, 2023, alleges willful violations of the FLSA. (See Compl. ¶¶ 49-50, 56-57.) Therefore, the FLSA's three-year statute of limitations applies. Because plaintiff alleges that he was not properly paid wages from April 14, 2023, through November 3, 2023, I find that those claims are timely under the FLSA. (See id. at 3-5; Affidavit of Frederick Beadle, sworn to May 1, 2024 ("Beadle Aff."), attached as Ex. A to the Mot., Dkt. No. 9-3, ¶¶ 2, 5.) Regardless of willfulness, plaintiff's claims must arise within six years prior to the filing of the complaint to be timely under the NYLL. See N.Y. LAB. L. §§ 198(3), 663(3). Thus, plaintiff's claims are timely under both statutes.

2. <u>Employee Coverage</u>

Since the provisions of the FLSA and NYLL apply only to employees of covered employers, plaintiff must show that he was defendants' employee, and that defendants were employers subject to the coverage of each statute.  For purposes of the FLSA, an employee is "any individual employed by an employer," meaning any individual whom an employer "suffer[s] or permit[s] to work."  29 U.S.C. §§ 203(e)(1); (g).  Absent a statutory exemption, such individuals are protected by the FLSA, so long as they work for a covered employer.  An employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."[1]  29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  <u>Id.</u> § 203(a).

"Employers are subject to FLSA when their employees are either engaged in commerce or in the production of goods for commerce ('individual coverage') or employed in an enterprise engaged in commerce or in the production of goods for commerce ('enterprise coverage')."  <u>Reyes v. Tacos El Gallo Giro Corp.</u>, No. 20 CV 3474, 2022 WL 940504, at *3 (E.D.N.Y. Jan. 25, 2022), <u>report and recommendation adopted</u>, 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022) (citing 29 U.S.C. §§ 206(a), 207(a)(1)) (quotation marks and citations omitted)).  Additionally, the business must be "an enterprise whose annual gross volume of sales made or business done is not less than $500,000."  29 U.S.C. § 203(s)(1)(A)(ii).  "[T]o properly allege individual or enterprise coverage, [a plaintiff] need not do much.  Aside from stating the nature

---

[1] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."  <u>Copantitla v. Fiskardo Estiatorio, Inc.</u>, 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); <u>see also</u> <u>Oaxaca v. Hudson Side Cafe Inc.</u>, No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018); <u>Fermin v. Las Delicias Peruanas Rest., Inc.</u>, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015).

of his work and the nature of [the employer's] business, [a] plaintiff[] must provide only straightforward allegations connecting that work to interstate commerce." Id. (citations and quotation marks omitted).

Courts in this district have found that, on motions for default judgment, conclusory allegations are sufficient to establish enterprise coverage where the court is able to logically infer that the business is engaged in interstate commerce based on the nature of the business. See, e.g., Cabrera v. Canela, 412 F. Supp. 3d 167, 173 (E.D.N.Y. 2019) (finding that "[i]t is eminently reasonable to infer" enterprise coverage because "it would defy logic to assume that none of the food, drinks, or materials served or used in the restaurant originated out of state," where defendant owned a restaurant that did annual business in excess of $500,000); Guardado v. 13 Wall Street, Inc., No. 15 CV 02482, 2016 WL 7480358, at *4 (E.D.N.Y. Dec. 2, 2016), report and recommendation adopted, 2016 WL 7480363 (Dec. 29, 2016) ("infer[ring] an interstate nexus based upon the factual allegations that [d]efendant operated a restaurant and that [p]laintiff handled food presumably prepared at that restaurant, the ingredients of which logically originated, at least in part, outside of New York State"); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) ("infer[ring] that the myriad goods necessary to operate a Peruvian restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State.")

Here, plaintiff alleges that "[a]t all relevant times, Forever Jerk [was] an 'enterprise engaged in commerce' within the meaning of the FLSA, the NYLL and the regulations thereunder," that the corporate defendant exceeded the $500,000 revenue threshold set by the FLSA, and that plaintiff was employed as a chef, server, and cashier.  (Compl. ¶¶ 1, 18-19; Beadle Aff. ¶ 3.)  Accordingly, I find that Forever Jerk is subject to enterprise coverage

under the FLSA because it is a business that uses supplies to produce food and it is reasonable to conclude that some of the supplies used traveled in interstate commerce. Furthermore, plaintiff alleges that he handled materials that were involved in interstate commerce in his preparation and service of food, and as a cashier. Therefore, plaintiff has adequately pleaded that he was an employee to whom no statutory exemption applies, insofar as he alleges that his primary duties included working as a cashier, server, and chef, and he worked for defendant from approximately April 14, 2023 through November 3, 2023. (Beadle Aff. ¶¶ 2-3, 17; Compl. ¶¶ 20-21, 23.) Accordingly, I find that plaintiff is a covered employee under the FLSA and the NYLL.

### 3. Employer Status of Corporate and Individual Defendants

Plaintiffs seek to hold two defendants—one corporate and one individual—liable for unpaid wages. (Compl. at 1; Beadle Aff. ¶¶ 2, 23-24.) As discussed above, plaintiff has sufficiently established that Forever Jerk was his employer and was engaged in commerce. (See Compl. ¶¶ 18-19; Beadle Aff. ¶¶ 2-3.)

To hold the individual defendant liable under the FLSA and NYLL, plaintiff must allege that Reid was his "employer" within the broad meaning of 29 U.S.C. § 203(d). See Fermin, 93 F. Supp. 3d at 35-37. The Second Circuit has set forth a series of non-exclusive factors for evaluating the "economic reality" of a given relationship to determine whether an employment relationship exists. See Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984). These factors include whether the alleged employer: (1) had the power to hire and fire the employee; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. Id.; see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). Here, plaintiff alleges that Reid had the authority to hire and fire him, set his pay rate, issue his pay, and set his

schedule, in addition to owning and controlling Forever Jerk.  (Compl. ¶ 17; Beadle Aff. ¶ 2; Pl.'s Mem. at 2-3.)  Thus, plaintiff has alleged that Reid exercised sufficient control over plaintiff to find that he was plaintiff's employer.  Accordingly, plaintiff has established Reid's liability under the FLSA and NYLL.

### B. Damages

Once the court determines that a defaulting defendant is liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'"  Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).  "The burden is on the plaintiff to establish [his or her] entitlement to recovery."  Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009).  Plaintiff requests damages in the total amount of $39,838.68 for unpaid minimum wage, overtime and spread-of-hours violations, liquidated damages, and wage notice and statement violations, plus interest.  (See Beadle Aff. ¶¶ 24-28; Pl.'s Mem. at 11; Salaman Decl. ¶¶ 20-24.)  I will address each category of damages in turn.

### 1.  Unpaid Wages

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'"  Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No.

12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted).  Here, because defendants have defaulted and no employment records have been produced, the court will presume the accuracy of plaintiff's recollection and estimate of hours worked.  Plaintiff asserts that, from approximately April 14, 2023 to November 3, 2023, he worked five to seven days per week and assumed various shifts ranging from twelve to thirteen hours per day.  (Compl. ¶¶ 20, 22, 23, 26, 27, 29, 31, 33, 34; Beadle Aff. ¶¶ 9, 10, 12, 14, 17.)

     a.  *Minimum Wage*

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work.  29 U.S.C. § 206; N.Y. LAB. L. § 652.  At all times relevant to this action, the federal minimum wage was $7.25.  29 U.S.C. § 206(a)(1).  However, New York law obligated defendant to pay plaintiff a minimum hourly wage of $15.00.[2]  N.Y. LAB. L. § 652(1)(a)(i).  Because New York's minimum wage is higher than the federal minimum wage, plaintiff may recover that amount.  29 U.S.C. § 218(a); see also Gunawan, 897 F. Supp. 2d at 89.

Plaintiff alleges that he worked the following hours and was paid varying daily

---

[2] This is the minimum wage for both "large employers" (employers of eleven or more employees) and "small employers" (employers of ten or fewer employees).  N.Y. LAB. L. § 652(1)(a)(i).  Plaintiff has not specified defendants' number of employees.  Regardless, the minimum wage during plaintiff's period of employment was $15.00 for both large and small employers.

rates: from mid-April to mid-May 2023 plaintiff worked twelve hours per day, seven days a week, and was paid a daily rate of $140; for the remaining three weeks in May he worked twelve hours a day, six days a week, and was paid a daily rate of $140; from the beginning of June 2023 until the end of July 2023 he worked twelve hours per day,[3] five days per week, and was paid a daily rate of $140; from the beginning of August 2023 through mid-October 2023 he worked thirteen hours per day, five days a week, and was paid a daily rate of $160; and from mid-October 2023 through November 3, 2023— the last three weeks of his employment— plaintiff worked thirteen hours per day, five days a week, and was paid a daily rate of $130.  (Compl. ¶¶ 26-36; Beadle Aff. ¶¶ 9-19.)  In order to determine how much plaintiff is owed in minimum wages, the court must first determine the hourly rate of pay he received from defendants by dividing his daily pay by the hours he worked for each period, as calculated in the table below.

| Regular Hourly Rate of Pay Calculation | | | | | |
|---|---|---|---|---|---|
| Pay Period | | Daily Compensation | Hrs. Worked per Day | Calc. Regular Rate of Pay | Minimum Wage Rate (NYLL) |
| From | To | | | | |
| 4/14/23 | 5/14/23[4] | $140 | 12 | $11.67 | $15.00 |
| 5/15/23 | 5/31/23 | $140 | 12 | $11.67 | $15.00 |
| 6/1/23 | 7/31/23 | $140 | 12 | $11.67 | $15.00 |
| 8/1/23 | 10/15/23[5] | $160 | 13 | $12.31 | $15.00 |
| 10/16/23 | 11/3/23 | $130 | 13 | $10.00 | $15.00 |

[3] Plaintiff alleges that between June 2023 and July 2023 he "worked 21 hours per day, 5 days per week, for a total of 60 hours per week."  (Beadle Aff. ¶ 14.)  However, this appears to be a typo.  Based on the context of the calculation and as indicated in other filings, plaintiff worked twelve hours a day for that time period.  (See Pl.'s Mem. at 3-5; Compl. ¶ 31.)

[4] Because plaintiff alleges "mid-May," the court selects May 14, 2023 to mark the end of the first pay period, and May 15, 2023 as the start of the second pay period.  (See Compl. ¶¶ 26, 29; Beadle Aff. ¶¶ 9,12.)

[5] Because plaintiff alleges for "the last three weeks of [his] employment, [his] pay was reduced," the court selects October 15, 2023 to mark the end of the fourth pay period, and October 16, 2023 as the start of the final pay period.  (See Beadle Aff. ¶ 19.)

Based on plaintiff's submissions and my own calculations, I find that defendant did not pay plaintiff a regular hourly rate of pay that was equal to or greater than the minimum wage required by New York law from April 14, 2023 through November 3, 2023. Therefore, plaintiff is owed damages for minimum wage violations for that period. I respectfully recommend that plaintiff be awarded **$3,674.00** for minimum wage violations for the first forty hours worked each week, in line with the below calculations.

| Minimum Wage Calculation | | | | | | | |
|---|---|---|---|---|---|---|---|
| Pay Period | | Weeks | Hours | Regular Rate of Pay | Minimum Wage Rate | Hourly Minimum Wages Owed | **Minimum Wages Owed** |
| From | To | | | | | | |
| 4/14/23 | 5/14/23 | 4 | 40 | $11.67 | $15.00 | $3.33 | **$532.80** |
| 5/15/23 | 6/1/23 | 3 | 40 | $11.67 | $15.00 | $3.33 | **$399.60** |
| 6/1/23 | 7/31/23 | 8 | 40 | $11.67 | $15.00 | $3.33 | **$1065.60** |
| 8/1/23 | 10/15/23 | 10 | 40 | $12.31 | $15.00 | $2.69 | **$1,076** |
| 10/16/23 | 11/3/23 | 3 | 40 | $10.00 | $15.00 | $5.00 | **$600** |
| Total Minimum Wages Owed: $3,674 | | | | | | | |

b. *Overtime Compensation*

Plaintiff alleges that defendants willfully violated the FLSA and NYLL by failing to pay him overtime wages. (Compl. ¶¶ 55-61.) Plaintiff is entitled to compensation under the FLSA and NYLL at the rate of one and one-half times his regular rates of pay for the hours he worked in excess of forty during a workweek. See 29 U.S.C. § 207(a)(1); N.Y.C.R.R. tit. 12, § 142-2.2. "'[T]he regular rate refers to the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he [or she] is employed.'" Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015) (quoting Walling v. Youngerman Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)). The method for calculating overtime is the same under both statutes, but a plaintiff may not receive double damages. See Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at

*15 (E.D.N.Y. Sept. 22, 2017).

To calculate the overtime compensation plaintiff is owed, the number of hours he worked over forty each week is multiplied by 150 percent of the higher of (i) his regular rates of pay, or (ii) the applicable minimum wage.  See Long Lin v. New Fresca Tortillas, Inc., No. 18 CV 3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019).  Plaintiff alleges that he worked approximately forty-four overtime hours per week between April 14, 2023 and mid-May, 2023, thirty-two overtime hours per week for the remaining three weeks of May 2023, twenty overtime hours per week between June 1, 2023 and July 31, 2023, twenty-five overtime hours per week from August 1, 2023 through the first week of October 2023, and twenty-five overtime hours for the remainder of October 2023, through November 3, 2023, and that defendant never paid him overtime compensation for these hours.  (See Compl. ¶¶ 27, 29, 31, 34, 41; Beadle Aff. ¶¶ 9, 10, 12, 14, 17, 23.)

Because plaintiff has already been paid for these hours, his overtime deficiency is "calculated by multiplying the difference between the paid rate and the overtime wage rate by the total number of overtime hours worked."  Sanchez v. Ms. Wine Shop Inc., No. 22 CV 2178, 2022 WL 17368867, at *12 (E.D.N.Y. Nov. 30, 2022) (citations omitted).  Alternatively, plaintiff's actual compensation for overtime hours worked can be subtracted from the overtime wages that should have been paid to plaintiff based on the applicable overtime rates to achieve the same result, as demonstrated below.  Based on the Regular Hourly Rate of Pay Calculation above and the calculations in the below table, I respectfully recommend that plaintiff be awarded **$8,163.56** in unpaid overtime wages.[6]

---

[6] Plaintiff requests $8,980.34 in unpaid overtime compensation (see Pl.'s Mem. at 3, 4), but his calculations are incorrect.

| Overtime Wage Calculation | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Pay Period | | No. Weeks Worked | OT Hours | Rate of Pay | Actual Compensation for OT Hours | Minimum Wage Rate | OT Rate | Overtime Wages Owed Minus Wages Paid |
| From | To | | | | | | | |
| 4/13/23 | 5/14/23 | 4 | 44 | $11.67 | $2,053.92 | $15.00 | $22.50 | $3,960 - $2,053.92 = $1,906.08 |
| 5/15/23 | 6/1/23 | 3 | 32 | $11.67 | $1,120.32 | $15.00 | $22.50 | $2,160 - $1,120.32 = $1,039.68 |
| 6/1/23 | 7/31/23 | 8 | 20 | $11.67 | $1,867.20 | $15.00 | $22.50 | $3,600 - $1,867.2 = $1,732.80 |
| 8/1/23 | 10/15/23 | 10 | 25 | $12.31 | $3,077.50 | $15.00 | $22.50 | $5,625 - $3,077.5 = $2,547.50 |
| 10/16/23 | 11/3/23 | 3 | 25 | $10.00 | $750.00 | $15.00 | $22.50 | $1,687.50 - $750 = $937.50 |
| Total OT Wages Owed: $8,163.56 | | | | | | | | |

2. Spread of Hours

Plaintiff also seeks spread of hours pay under the NYLL.  (See Compl. ¶¶ 42, 45, 62-64.)  "The spread of hours is the length of the interval between the beginning and end of an employee's workday."  N.Y.C.R.R. tit. 12, § 146-1.6(a).  "On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate."  Id.  Plaintiff alleges that "[d]espite working shifts in excess of ten hours per day" (Compl. ¶¶ 42), "[d]efendants failed to pay spread-of-hours" pay for days that exceeded ten hours.  (Beadle Aff. ¶¶ 10, 12, 14, 17, 23.)  For each day plaintiff worked a shift of more than ten hours, he is entitled to an additional hour of pay at the minimum wage rate.  Therefore, I respectfully recommend that plaintiff be awarded **$2,265** in spread of hours damages, consistent with the calculations below.

| Spread of Hours Calculations | | | | | |
|---|---|---|---|---|---|
| Pay Period | | No. of Weeks | SOH Days per Week | Minimum Wage Rate | SOH Owed |
| From | To | | | | |
| 4/13/23 | 5/14/23 | 4 | 7 | $15.00 | $420 |
| 5/15/23 | 6/1/23 | 3 | 6 | $15.00 | $270 |
| 6/1/23 | 7/31/23 | 8 | 5 | $15.00 | $600 |

| 8/1/23 | 10/15/23 | 10 | 5 | $15.00 | $750 |
|--------|----------|-----|-----|--------|------|
| 10/1623 | 11/3/23 | 3 | 5 | $15.00 | $225 |
| **Total: $2,265** | | | | | |

### 3. Liquidated Damages

Plaintiff additionally requests liquidated damages for unpaid wages. (See Pl.'s Mem. at 5-6; Compl. ¶¶ 3-4, 51, 54, 58, 61, 64); see also Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (noting that plaintiffs cannot recover cumulative liquidated damages under both the FLSA and NYLL for the same period). Plaintiffs may recover liquidated damages in the amount of 100 percent of unpaid wages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. LAB. L. §§ 198(1-a), 663; see also Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 CV 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012), report and recommendation adopted, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012).

Here, defendants have not answered or otherwise appeared in this action and thus cannot demonstrate a "good faith" basis for believing the underpayment of wages was lawful. I accordingly recommend that plaintiff be awarded **$14,102.56** in liquidated damages, which is the amount equal to his unpaid wages as represented above.

### 4. Wage Notices & Wage Statements

Plaintiff also seeks $10,000 total in statutory damages for defendants' failure to provide a wage notice or wage statements as required by NYLL §§ 195(1) and 195(3). (Compl. ¶¶ 65-70; Beadle Aff. ¶¶ 26-27; Pl.'s Mem. at 6-7.) New York's Wage Theft Prevention Act ("WTPA") § 195(1) requires employers to give their employees written notice containing the "employee's rate of pay, allowances, and various other information relating to the computation of plaintiff's pay" at the time of hiring. Deng v. Frequency Elecs., Inc., No. 21 CV 6081, 2022

WL 16923999, at *8 (E.D.N.Y. Nov. 14, 2022).  NYLL § 195(3) requires employers "to provide, for each pay period, a statement ('wage statement') showing how that pay was computed including deductions."  Id.  Plaintiff asserts that did not receive a wage notice or wage statements from defendants.  (Compl. ¶¶ 2, 4, 24-25, 46-47, 65-70; Beadle Aff. ¶¶ 6-7, 26-27; Pl.'s Mem. at 6-7.)

A technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation. See TransUnion LLC v. Ramirez, 594 U.S. 413 (2021).  Consequently, some courts in this Circuit have "found allegations of technical violations of New York Labor Law's wage notice and statement requirements to be insufficient, on their own, to confer Article III standing."  Beh v. Cmty. Care Companions Inc., No. 19 CV 1417, 2022 WL 5039391, at *7 (W.D.N.Y. Sept. 29, 2022); see also Deng, 2022 WL 16923999, at *9 (finding that plaintiff lacked standing because the "complaint contains no allegations that she was somehow injured merely because of the failure to provide the required notice and statements."); You Qing Wang v. XBB, Inc., No. 18 CV 7341, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to Defendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim."); Francisco v. NY Tex Care, No. 19 CV 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (". . . based on the record before the Court, it is not clear that [failure to provide wage notices and statements] led to an 'injury' that can be recognized by a federal court.").  These cases rely primarily on the Second Circuit's reasoning in Maddox v. Bank of New York Mellon Tr. Co., N.A., where the court found that the plaintiffs had failed to allege a concrete harm arising out of the defendant's failure to timely present a certificate of discharge to the county clerk, a purely technical violation.  19 F.4th 58, 64-66 (2d Cir. 2021).

Nevertheless, other courts in this Circuit have continued to grant damages for wage statement and notice violations.  See, e.g., Gunthorpes v. Im. Grp., LLC, No. 21 CV 5140, 2024 WL 2022688, (E.D.N.Y. May 7, 2024); Veloz v. MM Custom House Inc., No. 19 CV 852, 2024 WL 1282698 (E.D.N.Y. Mar. 26, 2024); Lin v. Bund Dumpling House Inc., No. 22 CV 6989, 2024 WL 1259358 (E.D.N.Y. Mar. 22, 2024); Lopez v. Metro & Graham LLC., No. 22 CV 332, 2023 WL 8527560 (E.D.N.Y. Dec. 8, 2023); Arguello v. Lojan, No. 22 CV 6236, 2023 WL 6172246 (E.D.N.Y. Sept. 22, 2023); Cuchimaque v. A. Ochoa Concrete Corp., No. 22 CV 6136, 2023 WL 9104384 (E.D.N.Y. Aug. 23, 2023); Black v. 7714 Ent., Corp., No. 21 CV 4829, 2022 WL 3643969 (E.D.N.Y. Aug. 24, 2022); Brito v. Marina's Bakery Corp., No. 19 CV 828, 2022 WL 875099 (E.D.N.Y. Mar. 24, 2022); Santos v. Cancun and Cancun Corp., No. 21 CV 192, 2022 WL 1003812 (E.D.N.Y. Feb. 17, 2022); Lamar v. A&O Brothers Corp., No. 21 CV 169, 2022 WL 1422439 (E.D.N.Y. Feb. 2, 2022); Willians v. Miracle Mile Props. 2 LLC, No. 20 CV 3127, 2022 WL 1003854 (E.D.N.Y. Feb. 1, 2022).

One such court recently found that a plaintiff bringing claims under the WTPA for wage statement and notice violations is not required to show "the downstream impact on the plaintiff of the non-provision of the required notice."  Bueno v. Buzinover, No. 22 CV 2216, 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023) (adopting in part the Report and Recommendation but reversing the Report's finding that there was no Article III standing with respect to the wage statement and notice violations).  In so finding, the court in Bueno emphasized that the concrete harm necessary for Article III standing is captured in the legislative purpose of the WTPA, which provides not only an avenue for employees to recover wages owed them by their employer but also a means to empower them—namely, through the provision of written notices with respect to employers' legal obligations—to advocate for themselves.  Bueno,

16

2023 WL 2387113, at *3.

It is critical to note that the factual circumstances arising out of cases like TransUnion and Maddox versus those arising in cases under the WTPA are fundamentally distinct. In TransUnion, the entire class of plaintiffs had alleged that TransUnion had violated its obligations under the Fair Credit Reporting Act ("FCRA") by maintaining credit files for those plaintiffs that contained misleading OFAC alerts. TransUnion, 594 U.S. at 432-33. However, only 1,853 of the class members had actually suffered the reputational harm of having those misleading OFAC alerts disseminated to third-party businesses, *i.e.*, the harm FCRA sought to prevent via the disputed provisions. Id. As such, those 1,853 class members were deemed to have standing, whereas the remaining class members—whose misleading credit files had not been disseminated—were deemed not to have standing for failure to allege either actual or imminent harm. Id. at 2209. Similarly, in Maddox, the plaintiffs alleged violations of New York's mortgage-satisfaction-recording statutes and had rooted their standing to sue in "impaired access to accurate financial information," "a false impression adverse to their credit status," and "the right to be free of these harms [as] recognized by the state legislature." Maddox, 19 F.4th at 61, 64-66. However, the Second Circuit found that the plaintiffs lacked standing because they had failed to plead sufficient facts to show that any of the risks of harm—namely, risk of (1) having "an actionable cloud on title to the property securing the discharged mortgage debt," (2) reputational harm; and (3) difficulty obtaining financing if they so pleased—alleged by the plaintiffs, had or would likely come to fruition. Id. at 64-66.

The wage statement and notice violations alleged here are of a different class of harm than those alleged in TransUnion and Maddox. The WTPA was enacted to "protect an employee's concrete interest in being paid what he or she is owed under the NYLL." Bueno,

2023 WL 2387113, at *3 (quoting Imbarrato v. Banta Mgmt. Servs., Inc., No. 18 CV 5422, 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020)).  Specifically, the WTPA's wage notice and wage statement provisions are intended to serve as safeguards of employees' broader interest in being paid the wages they earned.  Bueno, 2023 WL 2387113, at *3.  Indeed, if an employer's failure to provide wage statements or wage notices were considered a purely technical violation, then no employee would ever have standing to sue under the WTPA and the statutory damages provisions would be rendered meaningless and unenforceable.

Here, plaintiff alleges that he was never provided with either a wage notice upon hire or a wage statement throughout his employment with defendants.  (Beadle Aff. ¶¶ 6-7, 26-27; Compl. ¶¶ 2, 24-25; Pl.'s Mem. at 6-7.)  As demonstrated by the damages owed to plaintiff, plaintiff was not paid the wages he earned.  Therefore, I find that plaintiff has Article III standing to raise these statutory violations.  The penalty for failing to provide a wage notice is $50 per day, up to $5,000.  N.Y. LAB. L. § 198(1-b).  The penalty for failing to provide a wage statement is $250 per day, up to $5,000.  Id. § 198 (1-d).  Plaintiff worked for defendants for approximately 204 days.  Accordingly, I recommend that plaintiff be awarded $10,000 on these claims.  N.Y. LAB. L. §§ 198(1-b), (1-d).

### 5. Pre-Judgment Interest

Plaintiff requests pre-judgment interest.  (Compl. at 11; Pl.'s Mem. at 7; Salaman Decl. ¶ 24.)  The calculation of pre-judgment interest is based on unpaid wages, but not on liquidated or statutory damages.  Diaz v. Rene French Cleaners, Inc., No. 20 CV 3848, 2022 WL 4646866, at *11 (E.D.N.Y. Aug. 29, 2022), report and recommendation adopted, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022).  The rate of interest is calculated at nine percent per annum, and, where damages were incurred at various times, may be calculated from a single reasonable

intermediate date.  N.Y. C.P.L.R. §§ 5004, 5001(b).  The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating pre-judgment interest.  See Fermin, 93 F. Supp. 3d at 49; Diaz, 2022 WL 4646866, at *11.  The midpoint of plaintiff's employment beginning April 14, 2023 and ending November 3, 2024 is July 24, 2023.  (See Beadle Aff. ¶ 2, 17; Compl. ¶¶ 20, 34.)  Accordingly, I respectfully recommend that pre-judgment interest be awarded on plaintiff's total unpaid wages of $14,102.56 from July 24, 2023 to the date of this court's judgment at a per diem interest rate of **$3.45** ($14,102.56 x 0.09/365).

### 6.  Post-Judgment Interest

Finally, plaintiff requests that any amount that remains unpaid upon ninety days following the issuance of judgment or ninety days after the expiration of time to appeal, whichever is later, automatically increase by fifteen percent per NYLL §§ 198(4) and 663(4). (Compl. at 11; Pl.'s Mem. at 11.)  However, courts in this district have decided that "federal law control[s] how a federal judgment should be treated once it [is] entered" and that § 198(4) does not apply to federal judgments.  Chen v. Asian Terrace Rest., Inc., No. 19 CV 7313, 2022 WL 1460272, at *1, 2 (E.D.N.Y. May 9, 2022) ("§ 198(4) is inapplicable to federal judgments) (citing Quesada v. Hong Kong Kitchen, Inc., No. 20 CV5639, 2021 WL 861800, at *2 (E.D.N.Y. Mar. 8, 2021)); see also FCS Advisors, Inc. v. Fair Fin. Co., 605 F.3d 144 (2d Cir. 2010) (per curiam) (finding New York calculation on post-judgment interest invalid in a contract case despite the contract's New York choice of law provision).  Furthermore, the "Second Circuit has noted that even when a tribunal determines to increase judgment payment incentives by increasing the post-judgment interest rate, § 1961 overrides that determination."  Chen, 2022 WL 1460272, at *3. Section 1961 provides that interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as

published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." 28 U.S.C. § 1961(a).  Moreover, post-judgment interest under Section 1961 is mandatory.  See Fermin, 93 F. Supp 3d at 53.  Therefore, I respectfully recommend that plaintiff be awarded post-judgment interest under 28 U.S.C. § 1961.

### C. Attorney's Fees and Costs

As the prevailing party, plaintiff is entitled to recover reasonable attorney's fees and costs under both the FLSA and the NYLL.  See 29 U.S.C. § 216(b), N.Y. Lab. L. §§ 198, 663(1).  Plaintiff seeks an award of $14,480 in attorney's fees and $584 in costs.  (See Salaman Decl. ¶ 24; Expenses, attached as Ex. E to the Mot., Dkt. No. 9-7.)  Courts in this Circuit exercise their discretion to determine the reasonableness of attorney's fees using the "presumptively reasonable fee" standard.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008).  The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records.  See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam); N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); In re Phelan, 570 N.Y.S.2d 202, 203 (2d Dep't 1991).  Plaintiffs have satisfied this requirement.  (See Expenses.)  The court next assesses whether plaintiff's counsel requests a reasonable hourly rate.  Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  A reasonable hourly rate is "the rate a paying client would be willing to pay. . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  Arbor Hill, 522 F.3d at 190.  Reasonable hourly rates should be based on "rates

prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Loc. Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted).  A judge may determine prevailing rates based on evidence presented, knowledge of rates charged in the community, and "the nature of representation and type of work involved in a case." Arbor Hill, 522 F.3d at 184 n.2; see Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).

Plaintiff's counsel requests an hourly rate of $400 for Robert Salaman, a partner at Akin & Salaman PLLC, who has been practicing law since 2013.  (See Expenses at 1; Pl.'s Mem. at 9.)  "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." Diaz, 2022 WL 4646866, at *13 (quotation marks and citations omitted).

Plaintiff's counsel relies on Martinez to support its claim that an hourly rate of $400 is reasonable for Mr. Salaman, "which is in line with the prevailing market rates today for an attorney of similar experience practicing within the Eastern District of New York."  (Pl.'s Mem. at 9 (citing Martinez v. New 168 Supermarket LLC, No. 19 CV 4526, 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020), report and recommendation adopted, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020).)  However, at the time of the judgment, the partner referred to there had over a decade more experience than Mr. Salaman does now.  See Martinez, 2020 WL 5260579, at *8 (finding that an hourly rate of $400 was reasonable for a partner who was admitted to the bar in 1997 and had litigated over 500 wage and hour cases); see also Haiyan Jiang v. D&S Wedding Planner Inc., No. 22 CV 643, 2023 WL 6307813, at *31 (E.D.N.Y. Sep.

27, 2023) (reducing requested hourly rate of a partner with twenty-eight years of experience to $400).

Although the hourly rates requested by plaintiff's counsel do not exceed the range prescribed in Diaz, courts in the Eastern District have recently awarded an hourly rate of $375 in FLSA cases for partners with experience similar to or greater than Mr. Salaman's. See, e.g., Perez v. E.P.E. Enter. Corp. JerUSAlem Bedding Corp., No. 22 CV 6353, 2024 U.S. Dist. LEXIS 69443, at *16 (E.D.N.Y. Apr. 15, 2024) (reducing the requested hourly rate of a partner with twelve years of experience from $400 to 375), report and recommendation adopted, 2024 U.S. Dist. LEXIS 103130 (E.D.N.Y. June 10, 2024); Escobar v. Variedades Belen Corp., No. 23 CV 4849, 2024 WL 1259367, at *5-6 (E.D.N.Y. Mar. 25, 2024) (approving the requested hourly rate of $375 for a partner who had practiced since 2013); Astudillo v. Fusion Juice Bar Inc., No. 19 CV 2590, 2023 WL 3802754, at *16-17 (E.D.N.Y. Mar. 23, 2023) (assigning an hourly rate of $375 to a partner with twenty-five years of experience), report and recommendation adopted, 2023 WL 5436131 (E.D.N.Y. Aug. 23, 2023).  Accordingly, I recommend that Mr. Salaman's hourly rate be decreased to $375 per hour.

The court next looks to the reasonableness of the number of hours billed.  To determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994)).  The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).

Here, plaintiff's counsel seeks compensation for 36.2 hours of work performed by Mr. Salaman.  (See Expenses at 1.; Pl.'s Mem. at 10.)  Having reviewed the submitted time records, I find the claimed number of hours reasonable.  See, e.g., Zhang v. Asian Moon Rest. Corp., 20 CV 2776, 2022 WL 1422576, at *9 (E.D.N.Y. Mar. 15, 2022) (finding 44.8 hours to be within the reasonable range for a single-plaintiff FLSA default case), report and recommendation adopted, 2022 WL 1460275 (E.D.N.Y. May 9, 2022); Ahn v. Sun Cleaners Inc., 19 CV 5919, 2022 WL 586022, at *12 (E.D.N.Y. Feb. 18, 2022) (finding thirty-five hours to be a reasonable number of hours billed in a single-plaintiff FLSA default case); Du v. CGS Metal Fabrication Inc., 19 CV 1821, 2022 WL 987316, at *13 (E.D.N.Y. Jan. 14, 2022) (finding 31.1 hours reasonable in a single-plaintiff FLSA default case).  Accordingly, I respectfully recommend that plaintiff be awarded **$13,575** in attorney's fees.

Plaintiff additionally requests compensation for $584 in costs, representing $405 for this court's filing fee and $179 in service of process fees.  (See Pl.'s Mem. at 10; Expenses at 2.)  "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying."  Pichardo v. El Mismo Rincon Latino Corp., No. 17 CV 7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotations and citation omitted), report and recommendation adopted, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  Plaintiffs have submitted sufficient documentation for filing fees and service of process costs.  (See Expenses at 2.)  Accordingly, I find **$584** to be reasonable out-of-pocket expenses.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion be granted.  Furthermore, I respectfully recommend that plaintiff be awarded **$38,205.12** in total,

representing **$14,102.56** in unpaid wages, **$14,102.56** in liquidated damages, and **$10,000** for wage statement and notice violations.  I also recommend that pre-judgment interest be awarded on plaintiff's unpaid wages of $14,102.56 from July 24, 2023 to the date of this court's judgment at a per diem interest rate of **$3.45**.  Additionally, I recommend that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961(a).  Finally, I recommend that plaintiff receive **$13,575** in attorney's fees and **$584** in costs.

Plaintiff is directed to serve copies of this Report and Recommendation on defendants by regular mail, and to file proof of service with the court within ten days of this Report and Recommendation.  Any objections to this Report and Recommendation must be filed electronically within fourteen days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,


/s/
ROBERT M. LEVY
United States Magistrate Judge


Dated: Brooklyn, New York
       July 31, 2024